**ADAMS COUNTY SCHOOL DISTRICT NO. 50, Ali Joseph and Michael Bassett, Petitioners,**

**v.**

**Robert E. DICKEY, Respondent.**

**No. 89SC103.**

Supreme Court of Colorado, En Banc.

May 14, 1990.

Semple & Jackson, P.C., Martin Semple, Dwight L. Pringle and Patrick B. Mooney, Denver, for petitioners.

Mark S. Bove, Denver, for respondent.

Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the court of appeals decision in *Dickey v. Adams County School District No. 50*, 773 P.2d 585 (Colo.App.1988). The court of appeals held that plaintiff Robert Dickey's (Dickey's) complaint stated causes of action for breach of contract, and deprivation of property without due process of law in violation of the fourteenth amendment to the United States Constitution and 42 U.S.C. § 1983 (1982). *Id.* at 586. We affirm and remand for further proceedings.

I.

Dickey's complaint alleges that he was hired as a warehouse foreman by Adams County School District No. 50 (the School District) on July 25, 1981. Dickey was categorized by the School District's personnel policy as a "classified" employee.

During his employment with the School District, Dickey received a Classified Employees' Handbook (the handbook). The most recent edition of the handbook is dated July 1984. The handbook is addressed "to all classified employees," and states that the School District will follow a policy of progressive discipline. The handbook states that a supervisor may only discharge a classified employee if the employee's work is of such quality to require discharge, and that in discharging employees supervisors must follow a policy of progressive discipline. The handbook also states that the School District may only resort to immediate dismissal of an employee for certain enumerated acts of misconduct, or for other just and good causes.

Dickey received an unfavorable performance appraisal on or about December 20, 1984, which stated that he would be placed on probation for a period of 30 calendar days. The School District issued a series of progress reports from December 20, 1984, to January 21, 1985, and on January 21, issued a memorandum indicating satisfactory performance by Dickey and improvement in all areas. The School District held further meetings on the subject of Dickey's performance and issued a memo-

randum dated March 8, 1985, indicating that Dickey was making satisfactory progress.

Dickey took authorized medical leave from March 1, 1985, to April 8, 1985. On April 16, 1985, the School District gave Dickey an unfavorable performance appraisal which recommended his immediate termination. The School District served Dickey with a notice terminating his employment. The notice was executed by petitioner Michael Bassett (Bassett), Executive Director of Personnel for the School District. Dickey requested reinstatement and a hearing before petitioner Ali Joseph (Joseph), Superintendent of the School District. A hearing was held on May 23, 1985. On May 28, 1985, Joseph issued a memorandum denying reinstatement to Dickey.

Dickey filed a complaint against the School District, Joseph, and Bassett, which includes claims for breach of implied contract and deprivation of property without due process of law. Dickey alleges in his complaint that the School District did not follow principles of progressive discipline in discharging him, and that the School District discharged him when his work was not of such quality to require discharge. Dickey also alleges that his discharge was not justified by any just and good cause, or by any of the causes enumerated in the handbook. Dickey also alleges that the School District's actions constituted a deprivation of property without due process of law. Fairly read, Dickey's complaint alleges that his property interest in continued employment with the School District entitled him to constitutionally sufficient pre-termination procedures.

The district court dismissed Dickey's complaint for failure to state a claim for relief. The court of appeals reversed the district court and held that Dickey's complaint stated claims for relief for breach of implied contract and deprivation of property without due process of law.

## II.

### A.

■ The first issue we address is whether the employment termination procedures outlined in the School District's handbook are void on the ground they contravene an explicit grant of authority by the state. We conclude that they do not.

In *Johnson v. Jefferson County Board of Health,* 662 P.2d 463, 471 (Colo.1983), this court recognized the general rule that "a local government may not forbid that which the state has explicitly authorized." (Citing 1 C. Antineau, *Municipal Corporation Law* § 5.37 (1983)); *see also Kennedy v. Board of County Comm'rs,* 776 P.2d 1159, 1160 (Colo.App.1989) (statutory provisions have been construed to bar claims for breach of contract based on assurances in employee handbooks under the rationale that such a statute defines the employee as terminable at will and the statute supersedes any county declaration to the contrary). In *Johnson* we stated that "a political subdivision of the state[ ] may not by rule or regulation abdicate the authority and responsibility delegated to it by the legislature." 662 P.2d at 471. This rule is derived from the principle that

. " '[a] county is not an independent governmental entity existing by reason of any inherent sovereign authority of its residents; rather, it is a political subdivision of the state, existing only for the convenient administration of the state government, created to carry out the will of the state.... As a political subdivision, a county, and its commissioners, possess only such powers as are expressly conferred upon them by the constitution and statutes, and such incidental implied powers as are reasonably necessary to carry out such express powers.' "

*Id.* (quoting *County Comm'rs v. Love,* 172 Colo. 121, 125, 470 P.2d 861, 862 (1980)).

In *Johnson* a Jefferson County public health officer claimed that his dismissal by the Jefferson County Board of Health violated Jefferson County personnel rules. The board of health argued that its actions were authorized by subsection 25–1–505(1), 11 C.R.S. (1978), which provided that a county public health officer "shall be appointed by the board to serve at the pleasure of the board." *Id.* We held that the

board's statutory power to terminate the public health officer was not limited by the county personnel rules because the rules did "not override the explicit statutory authority of the board to discharge a public health officer appointed by the board." *Id.* (footnote omitted).

*Johnson*'s definition of the limits of local government power guides our determination of whether the School District could limit its power to discharge personnel through the adoption of a handbook establishing employment termination procedures. Whether Dickey may enforce the employment termination procedures contained in the handbook depends on whether the School District, acting through the Adams County Board of Education (the School Board), possessed the requisite statutory authority. We therefore examine the relevant statutes to determine whether the School Board could, through the promulgation of an employee handbook, adopt policies, rules and regulations which affect certain employment termination procedures.

█ "Legislative intent is the polestar of statutory construction." *Schubert v. People*, 698 P.2d 788, 793 (Colo.1985). Statutes must be construed as a whole to give a consistent, harmonious, and sensible effect to all of their parts. *See, e.g., Martinez v. Continental Enters.*, 730 P.2d 308, 313 (Colo.1986); *Board of County Comm'rs v. Denver*, 194 Colo. 252, 257, 571 P.2d 1094, 1097 (1977). In determining the meaning of a particular word or phrase, the meaning of the entire statute, or the relevant portion thereof, should be considered. *See* § 2-4-201, 1B C.R.S. (1980).

Article IX, section 2, of the Colorado Constitution directs the General Assembly to provide for the establishment and maintenance of a thorough and uniform system of free public schools throughout the state for children between the ages of 6 and 21. Article IX, section 15, of the Colorado Constitution directs the General Assembly to provide for the organization of school districts of convenient size, and to establish a board of education in each school district.

Acting at the direction of these constitutional mandates, the legislature has invested school boards in Colorado with a variety of enumerated "duties" and "powers." *See* §§ 22-32-109 & 22-32-109.5, 9 C.R.S. (1988) (specific duties of boards of education); § 22-32-110, 9 C.R.S. (1988) (specific powers of boards of education). We stated in *Fremont RE-1 School District v. Jacobs*, 737 P.2d 816, 818 (Colo.1987), that "[a]s we read the statutes, section 22-32-109 sets forth *mandatory* 'duties' of school boards and section 22-32-110 sets forth *discretionary* 'powers.'" (Emphasis supplied).

This case concerns two of the discretionary powers vested in school boards by subsections 22-32-110(1)(h) and (k). Section 22-32-110 provides that:

(1) In addition to any other power granted to a board of education of a school district by law, each board of education of a school district shall have the following specific powers, to be exercised in its judgment:

. . . .

(h) To discharge or otherwise terminate the employment of any personnel.

. . . .

(k) To adopt written policies, rules and regulations, not inconsistent with law, which may relate to the efficiency, in-service training, professional growth, safety, official conduct, and welfare of the employees, or any classification thereof, of the district. The practices of employment, promotion, and dismissal shall be unaffected by the employee's religious beliefs, marital status, racial or ethnic background, or participation in community affairs.

Subsection 22-32-110(1)(h) grants to school boards the power to terminate the employment of any personnel at the school board's pleasure. The common law rule in Colorado is that an employee who is hired "for an indefinite period of time is an 'at will employee' whose employment may be terminated by either party without cause and without notice, and whose termination does not give rise to a cause of action." *Continental Air Lines, Inc. v. Keenan*,

731 P.2d 708, 711 (Colo.1987); *accord Johnson*, 662 P.2d at 471. The language in subsection 22–32–110(1)(h) does not overcome the presumption of the common law that school boards are authorized to discharge any personnel at will.

Our inquiry does not end with subsection 22–32–110(1)(h), however. Subsection 22–32–110(1)(k) also grants school boards powers which are relevant to our resolution of this case. The first sentence of subsection 22–32–110(1)(k) authorizes school boards to adopt written policies, rules and regulations on the subjects of efficiency, in-service training, professional growth, safety, official conduct, and welfare of the employees, or any classification thereof, of the school district. The subjects identified in the first sentence of subsection 22–32–110(1)(k) are inherently related to practices affecting the employment, promotion, and dismissal of personnel. This is especially true of the professional growth of employees, employee safety, official employee conduct, and employee welfare. The legislature recognized this fact in the second sentence of subsection 22–32–110(1)(k). That sentence provides that "[t]he practices of employment, promotion and dismissal shall be unaffected by the employee's religious beliefs, marital status, racial or ethnic background, or participation in community affairs." This language expresses the legislature's recognition that school boards exercising their authority under subsection 22–32–110(1)(k) may adopt written policies, rules and regulations which affect employment, promotion, and dismissal practices. School boards are not required to adopt employment termination procedures, but if they choose to do so the promulgation of such procedures constitutes an authorized exercise of the powers granted to school boards in subsections 22–32–110(1)(h) and (k).

The language in subsections 22–32–110(1)(h) and (k) differs significantly from statutory provisions which have been held to override employment termination procedures established by local governments. *See Johnson*, 662 P.2d at 471 (statute directing that a county public health officer "shall be appointed by the board [of health]

to serve at the pleasure of the board" expressed the legislature's judgment that county boards of health should have the authority to discharge county public health officers "at any time without cause or formal procedure"); *Kennedy*, 776 P.2d at 1160 (statutory language that "[a]ny person appointed to such offices shall serve at the pleasure of the board of county commissioners" constitutes a legislative directive that holders of "such offices" are at-will employees).

Subsections 22–32–110(1)(h) and (k) also contrast with the statutory language at issue in *Seeley v. Board of County Commissioners*, 791 P.2d 696 (Colo.1990). The statute at issue in *Seeley*, section 30–10–506, 12A C.R.S. (1986), states that "[e]ach sheriff may appoint as many deputies as he may think proper ... and may revoke such appointments at his pleasure." *Id.*, at 699. In *Seeley* we hold that this language makes deputy sheriffs employees at will, and that sheriffs have no power to alter the employment status of deputy sheriffs through the promulgation of employee manuals. *Id.* at 700; *see also Goodwin v. Debekker*, 716 F.Supp. 1363, 1365 (D.Colo.1989) (holding that board of county commissioners of a non-home rule county cannot, by language in a personnel manual, supersede the county sheriff's statutory power to hire and fire at will); *Jackson v. Johns*, 714 F.Supp. 1126, 1130 (D.Colo.1989) (same); *Zatkin v. Bank of the Commonwealth*, 163 Mich. App. 171, 173, 414 N.W.2d 371, 372–73 (1987) (implied contract limiting defendant's power to discharge bank officer unenforceable as an *ultra vires* act where banking code provision stated that the "board [of directors] ... shall dismiss the officers or any of them at pleasure").

■ We also reject the School District's argument that the handbook is unenforceable because a school board may not, in the exercise of its legislative power, bind a succeeding board to a contract. This argument does not apply in this case. Even if the school board had withdrawn the handbook, that action would not affect the ability of employees discharged in violation of

the handbook while the handbook was in force to enforce the provisions in the handbook against the school board. *See In re Certified Question,* 432 Mich. 438, 441, 443 N.W.2d 112, 113 (1989) ("[a]n employer may, without an express reservation of the right to do so, unilaterally change its written policy from one of discharge for cause to one of termination at will, provided that the employer gives affected employees reasonable notice of the policy change").

### B.

■ In *Keenan,* 731 P.2d at 711, and *Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1348 (Colo.1988), we rejected the contention that employer personnel handbooks cannot form the basis for a breach of contract claim by a discharged employee. In *Keenan,* 731 P.2d at 711, we identified two theories under which a terminated employee can enforce termination procedures in an employee manual. We stated that an

> employee may be entitled to relief under ordinary contract principles if he can demonstrate, first, that in promulgating the termination procedures the employer was making an offer to the employee— that is, the employer manifested his willingness to enter into a bargain in such a way as to justify the employee in understanding that his assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain—and second, that his initial or continued employment constituted acceptance of and consideration for those procedures.

*Id.* (citation and footnote omitted). We also stated that

> the employee would be entitled to enforce the termination procedures under a theory of promissory estoppel if he can demonstrate that the employer should reasonably have expected the employee to consider the employee manual as a commitment from the employer to follow the termination procedures, that the employee reasonably relied on the termination procedures to his detriment, and that injustice can be avoided only by

enforcement of the termination procedures.

*Id.* at 712.

In *Churchey,* 759 P.2d at 1348–49, we explained the basis of our holding in *Keenan* in more detail. There we cited the following reasoning in support of the idea that personnel policies or practices can form the basis of an enforceable contract between employer and employee:

> "While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly, cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly. No pre-employment negotiations need take place and the parties' minds need not meet on the subject; nor does it matter that the employee knows nothing of the particulars of the employer's policies and practices or that the employer may change them unilaterally. It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation 'instinct with an obligation.'"

*Id.* (quoting *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 613, 292 N.W.2d 880, 892 (1980) (footnotes omitted). *See also Cleary v. American Airlines, Inc.,* 111 Cal.App.3d 443, 455–56, 168 Cal.Rptr. 722, 729 (1980); *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 626–27 (Minn.1983); *Weiner v. McGraw-Hill, Inc.,* 57 N.Y.2d 458, 463, 443 N.E.2d 441, 444, 457 N.Y.S.2d 193, 196 (1982) ("while coextensive promises may constitute consideration for each other, 'mutuality,' in the sense of requiring such reciprocity, is not necessary when a promisor receives other valid consideration.").

When a local government acts within its statutory authority the principles outlined in *Keenan* and *Churchey* apply. Under the circumstances of this case the School Board was authorized to limit its power to discharge personnel, which it did by promulgating and issuing the handbook. Dickey may rely on provisions in the handbook to state a claim for relief for breach of implied contract.

### III.

■ The court of appeals held that Dickey's allegations were sufficient to state a claim for relief for deprivation of his alleged property interest in his employment without due process of law. *Dickey,* 773 P.2d at 586. We hold that, depending on the facts and circumstances of the case, under Colorado law an employee personnel handbook may grant to an employee a property interest in continued employment which entitles the employee to the protections of the procedural· due process guarantee of the United States Constitution.[1]

### A.

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■ " '[P]roperty' interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, 'property' denotes a broad range of interests that are secured by 'existing rules or understandings.' " *Perry v. Sinderman,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699,

33 L.Ed.2d 570 (1972) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709). An employee's interest in a benefit is a property interest for due process purposes if there exist rules or mutually explicit understandings that support the employee's claim of entitlement to the benefit and that the employee may invoke at a hearing. *Id.* Property interests may be created by ordinance or implied contract. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). The sufficiency of an employee's claim of entitlement is determined by reference to state law. *Id.; Regents of the University of Michigan v. Ewing,* 474 U.S. 214, 222 n. 7, 106 S.Ct. 507, 511 n. 7, 88 L.Ed.2d 523 (1985); *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978); *see also Physicians' Servs. Medical Group, Inc. v. County of San Bernardino,* 825 F.2d 1404, 1407–09 (9th Cir.1987). "The hallmark of property, the Court has emphasized, is an individual entitlement grounded in state law, which cannot be removed except 'for cause.' " *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982).

Colorado law can supply the basis for a public employee's assertion that he or she has a legitimate claim of an entitlement in the form of continued employment. We have held in this case that the School Board was authorized to limit its power to dismiss Dickey by promulgating an employee handbook pursuant to subsection 22–32–110(1)(k). Whether the School Board's promulgation of the handbook established "rules or mutually explicit understandings" which allow Dickey to state a claim for deprivation of property without due process of law depends on whether, under Colorado law, the facts and circumstances surrounding the conditions of Dickey's employment gave him a legitimate claim of entitlement. *Bishop,* 426 U.S. at 344, 96 S.Ct. at 2077; *Sinderman,* 408 U.S. at 601, 92 S.Ct. at 2699; *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

---

**1.** Dickey's complaint did not allege a claim for relief under the due process clause of the Colo-

rado Constitution.

Courts addressing this issue have generally held that when state law recognizes that employee handbooks may form the basis of a contract action, the personnel policies and regulations in question determine whether the employee possessed a legitimate claim of entitlement under the due process clause. In *Thomas v. Ward,* 529 F.2d 916, 919 (4th Cir.1975), the court held that a school board's employee handbook granted a property interest to nonprobationary employees by fostering an understanding that they would be subject to dismissal only for cause. In *Patkus v. Sangamon–Cass Consortium,* 769 F.2d 1251, 1262–64 (7th Cir.1985), the court held that a county personnel manual, which provided that employees could only be dismissed for cause, created a property interest in continued employment. *See also Vail v. Board of Educ.,* 706 F.2d 1435, 1437–38 (7th Cir.1983) (superintendent's authorized promise to athletic coach that school board would hire him for two years gave the coach a property interest in continued employment), *aff'd by an equally divided court without opinion sub nom. Board of Educ. v. Vail,* 466 U.S. 377, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984). In *Bailey v. Kirk,* 777 F.2d 567, 574–75 (10th Cir.1985), the court held that the city's personnel manual, which provided that classified employees could only be dismissed for cause, gave a discharged police chief a property interest in continued employment. In *Nicholson v. Gant,* 816 F.2d 591, 597 (11th Cir.1987), the court held that a handbook of employee personnel policies adopted by a county commission gave "regular employees" a property interest in continued employment by specifying they were entitled to adequate notice prior to termination, and that they could only be terminated "for cause."

These cases contrast with cases in which courts have held, based on either substantive state law or the circumstances surrounding the employment relationship, that the employee in question did not possess a property interest in continued employment. *See, e.g., Smith v. Board of Educ. of the City of Chicago,* 853 F.2d 517, 521 (7th Cir.1988) (finding no property interest where personnel clerk employed by school board, who did not have the authority to bind the school board to a contract, told the employee she was a "certified" employee entitled to certain protections); *Skeets v. Johnson,* 816 F.2d 1213, 1215 (8th Cir.1987) (en banc) (post-termination procedures outlined in personnel manual did not give terminated at-will public employee property interest in continued employment); *Payne v. Ballard,* 761 F.2d 491, 493 (8th Cir.1985) (finding no property interest where school officials told a teacher he was a "permanent" employee but did not accord permanent employees any special tenure); *Graham v. City of Oklahoma City, Okla.,* 859 F.2d 142, 146 (10th Cir.1988) (discharged police officer had no property interest because provisions of the city personnel policy were not authorized by the Oklahoma City Charter); *Wofford v. Glynn Brunswick Memorial Hosp.,* 864 F.2d 117, 119 (11th Cir.1989) (discharged hospital worker did not maintain a property interest under Georgia law because hospital policies and procedures contravened a Georgia statute making the hospital worker an at-will employee).

■ A terminated Colorado public employee may state a claim for relief for deprivation of property without due process of law if rules or mutually explicit understandings, which the public employer was authorized to enact or make the basis of a binding agreement, create a sufficient expectancy of continued employment to give the employee a legitimate claim of entitlement. *Bailey v. Kirk,* 777 F.2d at 574–75; *Vinyard v. King,* 728 F.2d 428, 432 (10th Cir.1984) (under Oklahoma law an employee handbook may create a property interest in continued employment).

In this case we hold that Dickey's allegations state a claim for relief for deprivation of property without due process. We do not hold that as a matter of law Dickey possessed a property interest in continued employment because Dickey's § 1983 claim is based on factual allegations which will have to be resolved by the trier of fact on remand. *See Keenan,* 731 P.2d at 713 (remanding to resolve employee's breach of

contract claim based on standards set forth in opinion); *see also Casias v. City of Raton,* 738 F.2d 392, 395 (10th Cir.1984) (remanding for jury to determine whether, by its terms, city personnel ordinance applied to plaintiff).

### B.

On remand the trier of fact will also have to consider whether the procedures employed by the school board in terminating Dickey violated the procedural due process protections of the United States Constitution.

In *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 540–41, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (1985), the Supreme Court explicitly rejected the notion that " '[w]here the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant ... must take the bitter with the sweet.' " (Quoting *Arnett v. Kennedy,* 416 U.S. 134, 153–54, 94 S.Ct. 1633, 1644, 40 L.Ed.2d 15 (1974) (plurality opinion)). The Court held that "the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct." *Id.* 470 U.S. at 541, 105 S.Ct. at 1493.

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' " *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950)). " '[T]he root requirement of the Due Process Clause [is] that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.' " *Id.* (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in original)); *but cf., Federal Deposit Ins. Corp. v. Mallen,* 486 U.S. 230, 108 S.Ct. 1780, 1787, 100 L.Ed.2d 265 (1988) ("[a]n important govern-

ment interest accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation"). "Some kind of hearing" is constitutionally required prior to the discharge of an employee who has a constitutionally protected property interest in his or her employment. *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493; *Roth,* 408 U.S. at 569–70, 92 S.Ct. at 2705; *Sinderman,* 408 U.S. at 599, 92 S.Ct. at 2698. In *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493, the Court held that terminated employees with a constitutionally protected property interest in continued employment are entitled to "some form of pretermination hearing" based on a "balancing of the competing interests at stake." *See id.* at 543–46, 1493–95 (discussion of required formality and procedural requisites of a constitutionally sufficient hearing).

The judgment of the court of appeals is affirmed and the case is remanded for further proceedings.