801 F.Supp. 414 (1992)
David R. ERICKSON, Plaintiff,
v.
BOARD OF COUNTY COMMISSIONERS OF The COUNTY OF DELTA, STATE OF COLORADO, Ted H. Hayden, individually and in his official capacity as a member of the Board of County Commissioners of the County of Delta, and Robert "Bob" Watson, individually and in his official capacity as a member of the Board of County Commissioners of the County of Delta, Defendants.
Civ. A. No. 92-B-357.
United States District Court, D. Colorado.
August 15, 1992.
*415 *416 *417 John A. Brooks, E. Stefan Fredricksmeyer, Brooks & Brooks, Montrose, Colo., for plaintiff.
Cathy H. Greer, Hall & Evans, Denver, Colo., for defendants.

MEMORANDUM OPINION AND ORDER
BABCOCK, District Judge.

I. Background
Defendants' consolidated motion for summary judgment has been briefed fully *418 and argued orally. The motion will be granted in part and denied in part.
From October 1984 until December 9, 1991 plaintiff David R. Erickson (Erickson) served as County Administrator for Delta County, Colorado. Defendant Board of County Commissioners (the Board) appointed him to this position under § 30-11-107(1)(n), 12A C.R.S. (1985). Erickson served at the Board's pleasure under this Colorado statute. As county administrator Erickson supervised the various county departments.
Delta County is divided into three districts and a commissioner from each is elected to serve on the Board. The budget also is divided among the three districts. In November, 1989 and during the fall of 1991 Erickson advised the Board of potential budget law violations by board members Ted Hayden (Hayden) and Robert Watson (Watson). During a public board meeting in November, 1989 the Board reviewed Delta County's 1990 budget. At this meeting Hayden threatened to divert work reimbursements into his district's road and bridge fund because he was concerned that his district was not receiving adequate road and bridge funds. (See plaintiff's exhibit F, Erickson affidavit at ¶ 8.) Erickson openly stated during this meeting that this diversion would violate Colorado's local government budget laws. (Id.) In 1991 Watson allegedly allowed county equipment and crews to be used free of charge in the construction of a golf course. When Watson revealed this information to Erickson privately, Erickson informed him that the county must be reimbursed for the use of its equipment and crews. (Id., at ¶ 10.)
To correct Hayden's and Watson's alleged budget law violations Erickson informed the third commissioner, the county auditor, and the local newspaper about their alleged budgetary improprieties. (Id., at ¶ 11.) The Board later accepted Erickson's recommendation that the road and bridge fund and the golf course project be audited.
Erickson was fired without notice or a hearing on December 9, 1991. Pursuant to the Delta County employee handbook, Erickson requested and received a grievance hearing on January 8, 1992, at which the Board ratified the decision to terminate his employment. Erickson then filed this action against the Board, Hayden, and Watson under 42 U.S.C. § 1983 (1979) and the Colorado Constitution for discharging him in retaliation for exercising his right to free speech (second count). He also alleges federal claims under section 1983 and state claims under Art. II § 25 of the Colorado Constitution for violations of his rights to substantive and procedural due process (counts three and four). He further alleges state law claims under C.R.C.P. 106(a)(4) for judicial review of the Board's decision to discharge him (count one), civil conspiracy (count five), and exemplary damages (count six).

II. Summary judgment standards
Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment may be entered where a party fails to make a showing sufficient to establish an essential element of its claim and on which it bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The non-movant must come forward with specific facts showing there is a genuine issue for trial. Clemmons v. Bohannon, 956 F.2d 1523, 1525 (10th Cir.1992). If the only evidence supporting a plaintiff's claim is merely colorable or not significantly probative such that no reasonable person could find for him on his claim, summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Summary judgment, however, should not be entered if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor, a reasonable jury could return a verdict for that party. Anderson, 477 U.S. at 252, 106 S.Ct. at 2512; Clemmons, 956 F.2d at 1525. All doubts must be resolved in favor of the *419 existence of triable issues of fact. Boren v. Southwestern Bell Telephone Co., 933 F.2d 891, 892 (10th Cir.1991).

III. Substantive and procedural due process claims
To sustain his due process claims Erickson must prove first he had a property interest in his employment. Carnes v. Parker, 922 F.2d 1506, 1509 (10th Cir.1991). A public employee has a property interest in his employment if under state law he has a legitimate claim of entitlement to continued employment. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); Carnes, 922 F.2d at 1510.
The Board appointed Erickson county administrator under the following statute:
(1) The board of county commissioners of each county has the power at any meeting:
. . . . .
(n) To create, by resolution duly adopted, the office of county manager, or administrative assistant to the board of county commissioners, or county budget officer, or any other such office as may in its judgment, be required for the efficient management of the business and concerns of the county. When so created, the board has power to make appointments to such offices, to prescribe the duties to be performed by such appointees, to fix the compensation to be paid to such appointees, and to pay the same from the county general fund. Any persons appointed to such offices shall serve at the pleasure of the board of county commissioners.
§ 30-11-107(1)(n), 12A C.R.S.
Because Erickson served at the board's pleasure under this statute he was an at will employee who could be terminated at any time without notice or cause and whose termination does not give rise to a cause of action. Adams City School District No. 50 v. Dickey, 791 P.2d 688, 691 (Colo.1990). Where, as here, an employee serves at the pleasure of his employer he has no legitimate claim of entitlement to his continued employment and, therefore, no property interest in his employment. Phillips v. Calhoun, 956 F.2d 949, 951 (10th Cir.1992).
Erickson maintains, however, that by virtue of Delta County's employee manual he had an employment contract with the county overriding his terminable at will status. A local government may not contravene a statute providing that employees are terminable at will by issuing employee manuals creating employment contracts unless the local entity has been granted the authority to do so by the Colorado General Assembly. Dickey, 791 P.2d at 690; Johnson v. Jefferson County Board of Health, 662 P.2d 463, 471 (Colo.1983). Although not dispositive, the Dickey analysis is helpful in determining whether the General Assembly enabled the Board to alter Erickson's terminable at will employment status by issuing employee manuals. Dickey, 791 P.2d at 690.
The Dickey court concluded that the following statute enabled a school board to issue employee manuals which may create employment contracts, thereby overriding the terminable at will statute in that case:
(1) In addition to any other power granted to a board of education of a school district by law each board of education of a school district shall have the following specific powers, to be exercised in its judgment:
. . . . .
(k) To adopt written policies, rules, and regulations, not inconsistent with law, which may relate to the efficiency, inservice training, professional growth, safety, official conduct, and welfare of the employees, or any classification thereof, of the district. The practices of employment, promotion, and dismissal shall be unaffected by the employee's religious beliefs, marital status, racial or ethnic background, or participation in community affairs.
§ 22-32-110(1)(k), 9 C.R.S. (1988).
Because the subjects identified in this statute are so closely aligned with the subject matter of an employee manual the Dickey court reasoned that this statute authorized *420 the school board to issue employee manuals. Dickey, 791 P.2d at 692. Therefore, the school board had the authority to issue employee manuals, which if the requirements of Continental Air Lines v. Keenan, 731 P.2d 708 (Colo.1987) are satisfied, create employment contracts overriding the terminable at will statute. Dickey, 791 P.2d at 694.
Erickson argues that § 30-2-104(1)(a), 12A C.R.S. (1984) allows the Board to issue employee manuals which create an employment contract and override the statute providing that his employment is terminable at will. In relevant part § 30-2-104(1)(a) provides:
Except for those employees provided for pursuant to article 1 of title 26, C.R.S., [social service employees] boards of county commissioners are hereby empowered to adopt a classification and compensation plan for all county employees paid in whole or in part by the county. Such classification and compensation plan shall include workweek formulas of not less than forty hours designed to satisfy the varying requirements of each county service and county department as provided in paragraph (b) of this subsection (1). Upon acceptance by any elected official, such plan shall become binding upon the employees of that office. Change in benefits, pay grades, and job classifications of employees shall thereafter be made in accordance with such plan.
In Dickey, unlike here, there was a tight nexus between the subject matter of the relevant statute and the practices regulated by the employee manual (i.e., employment efficiency, training, professional growth, safety, employee welfare, official conduct, and discriminatory discharges). The nexus between the statute here and these same subjects is looser, if existent at all. Section 30-2-104(1)(a) addresses only employee compensation, classification, and benefits. It would strain this statute to read it as covering the broad range of employment issues enumerated in the statute interpreted by the Dickey court.
I hold that the Board did not have the express or implied power to override the terminable at will provision of § 30-11-107(1)(n) by promulgating employee manuals. Therefore, Erickson had no employment contract with the county. See Seeley v. Board of County Commissioners, 791 P.2d 696, 700 (Colo.1990). Erickson was a terminable at will employee having no property interest in his employment. See Phillips, 956 F.2d at 951. Thus, summary judgment is appropriate on his section 1983 claims and claims under Art. II § 25 of the Colorado Constitution for the alleged violation of his substantive and procedural due process rights.

IV. Free speech claims
Erickson claims his free speech rights were violated when he was terminated allegedly because of his comments about Hayden's and Watson's potential budget law violations. To prove a claim for retaliatory discharge a government employee must show that his speech was constitutionally protected and was a substantial or motivating factor in his discharge. Conaway v. Smith, 853 F.2d 789, 795 (10th Cir.1988). The Board argues that this claim fails because Erickson's speech is not constitutionally protected. Whether speech is constitutionally protected is a legal issue appropriate for summary judgment determination. Conaway, 853 F.2d at 796 n. 8.
In determining whether a public employee's speech is protected by the First Amendment I initially consider whether it relates to a matter of public concern. Conaway, 853 F.2d at 795. Speech relates to a matter of public concern if, after analyzing its content, form, and context, it can be considered fairly as relating to any matter of political, social, or other concern to the community. Conaway, 853 F.2d at 795. In general, speech concerns a matter of public import if it discloses official impropriety or other malfeasance. Connick v. Meyer, 461 U.S. 138, 148, 103 S.Ct. 1684, 1691, 75 L.Ed.2d 708 (1983); Conaway, 853 F.2d at 796.
*421 If in revealing official misconduct a speaker is motivated to disclose genuine improprieties then the speech is likely to relate to a matter of public concern. Conaway, 853 F.2d at 796. On the other hand, if the speaker is airing personal grievances with no relevance to the public interest his speech is not protected. Conaway, 853 F.2d at 796. See also Patrick v. Miller, 953 F.2d 1240, 1247 (10th Cir.1992). The content of Erickson's speech relates to the alleged misuse of public funds. Because this speech relates to alleged budgetary improprieties it is a matter of public concern. Connick, 461 U.S. at 148, 103 S.Ct. at 1691; Conaway, 853 F.2d at 796.
An important factor in assessing the form and context of the speech is whether the actor speaks as a citizen or as an employee. Schalk v. Gallemore, 906 F.2d 491, 495 (10th Cir.1990). Statements made during the course of an employee's official duties weigh against a conclusion that they involve matters of public concern. Considine v. Board of County Commissioners, 910 F.2d 695, 700 (10th Cir.1990). The Board claims Erickson's comments were made during an extended personal battle between Erickson and the Board. Erickson's comments were made in response to suspected budget law violations which were brought to his attention. By questioning contemporaneously the legality of these transactions it is unlikely he was airing personal grievances. Although Erickson made these comments during the course and scope of his employment and as an employee rather than as a private citizen, the content, form, and context of his speech indicate he was commenting on a matter of public importance. Thus, his speech satisfies the first part of the protected speech test.
The second step in determining whether speech is constitutionally protected involves balancing the interests of the public employee, as a citizen, in commenting on matters of public concern against the interests of the public entity, as an employer, in promoting efficiency of the public service it performs through its employees. Conaway, 853 F.2d at 795-796; Hicks v. City of Watonga, Okla., 942 F.2d 737, 744 (10th Cir.1991). Under this balancing test speech is protected unless the employer shows that some restriction is necessary to prevent the disruption of its official functions or ensure effective performance by its employees. Conaway, 853 F.2d at 797. Erickson was commenting on a matter of clear public concern and, thus, the Board carries a heightened burden of showing that its interest outweighs Erickson's free speech interest. Conaway, 853 F.2d at 797.
In evaluating an employer's interest I consider the manner, time, and place of the employee's expression and the context in which the dispute arose. Conaway, 853 F.2d at 797. The timing and manner of Erickson's comments were not unjustifiably disruptive. Rather, they were made spontaneously and in response to legitimate questions concerning suspected budget law violations. His comments were made to the Board as a whole and the county auditor. These are appropriate officials to address county budget issues. That Erickson's comments were made also to the local newspaper does not negate my conclusion that his comments were made in an appropriate place and context.
I also consider whether the statements impair discipline by superiors or disrupt harmony among co-workers, have a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or interfere with the regular operation of the enterprise. Conaway, 853 F.2d at 797. The fact that an employee's speech occurs at the office supports the employer's fear that the function of the office is endangered. Koch v. City of Hutchinson, 847 F.2d 1436, 1450 (10th Cir.), cert. denied, 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988). However, the employer must produce evidence that the employee's speech was in fact disruptive. Schalk, 906 F.2d at 496.
Although the Board cites examples of Erickson's resistance to the Board on other issues, it presents no evidence that the remarks at issue here unjustifiably interfered *422 with its functions. Furthermore, office harmony and the department's integrity are not so important that they will foreclose speech exposing potential governmental budgetary improprieties. Conaway, 853 F.2d at 798.
Finally, a governmental employee whose duties include "policy-making, or public contact" is subject to a higher standard of caution regarding speech. Conaway, 853 F.2d at 798. Speech occurring during the course of a governmental employee's official duties is a significant factor in concluding that the speech is not protected. Koch, 847 F.2d at 1442. When a close working relationship is essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate. Koch, 847 F.2d at 1452.
Erickson held a high ranking, policy-making position that required him to work closely with the Board. Also, his comments were made during the course of his official duties. Nevertheless, because Erickson was commenting on a matter of clear public concern, and because the Board presents no evidence indicating these comments created an unwarranted disruption in its operations, Erickson's interest in commenting about potential budget law violations outweighs the Board's interest in preserving the harmony of its office and the efficiency of its functions. I hold that Erickson's speech is protected by the First Amendment and Art II § 10 of the Colorado Constitution. Accordingly, summary judgment is inappropriate on Erickson's free speech claims under section 1983 and the Colorado Constitution.

V. Deliberate Indifference
The Board claims it is not liable on any of Erickson's section 1983 claims because he fails to allege that its decision to terminate him was done with deliberate indifference. Although it is unclear whether the Board or an individual board member fired Erickson on December 9, 1991, it is clear that the Board ratified this decision at the January 8, 1992 hearing. It is undisputed that the Board made the final decision to terminate Erickson's employment. Consequently, deliberate indifference need not be shown to sustain his free speech claims against the Board. Ware v. Unified School Dist. No. 492, 902 F.2d 815, 819 (10th Cir.1990); Mason v. Board of Education, School District No. 209, 741 F.Supp. 879 (D.Kan.1990).

VI. Qualified Immunity
Hayden and Watson contend they have qualified immunity on Erickson's federal and state constitutional claims. I need not address whether Hayden and Watson have qualified immunity on Erickson's claims for violations of his substantive and procedural due process rights because summary judgment will enter on these claims. See section III, supra. Therefore, I need only determine whether Hayden and Watson have qualified immunity on Erickson's federal and state free speech claims.
Qualified immunity is a legal question appropriate for summary judgment determination. Patrick, 953 F.2d at 1243. Qualified immunity shields government officials from liability for civil damages while performing discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Where, as here, a defendant asserts qualified immunity, the plaintiff carries the initial burden of coming forward with facts or allegations sufficient to show that the defendant's alleged conduct violated the law and the law was clearly established when the alleged violation occurred. Patrick, 953 F.2d at 1243; Frohmander v. Wayne, 958 F.2d 1024, 1027 (10th Cir.1992). The contours of the right must be sufficiently clear so a reasonable official would understand that what he is doing violates that right. Pueblo Neighborhood Health Centers v. Losavio, 847 F.2d 642, 645 (10th Cir.1988).
The contours of Erickson's free speech rights were not clearly established when he was discharged. Determining *423 whether a free speech right is clearly established for qualified immunity purposes should be approached on a case-by-case basis when, as here, a Pickering analysis is applied to determine whether speech is protected by the First Amendment. Patrick, 953 F.2d at 1246. In some circumstances the fact-specific balance struck under Pickering may preclude a determination of "clearly established law", thereby giving rise to qualified immunity under Harlow. Patrick, 953 F.2d at 1246.
In this case the Pickering analysis is complex and the balance struck narrowly tips in favor of Erickson's right to free speech. This case presents the situation where the close Pickering balance precludes me from concluding that a free speech right was clearly established. Consequently, Hayden and Watson are entitled to qualified immunity on Erickson's federal and state claims for deprivation of his right to free speech.

VII. Civil Conspiracy
Erickson alleges a state law civil conspiracy claim against Hayden and Watson only. Hayden and Watson contend that governmental immunity protects them from liability on this claim. Even if conspiracy is a tort for which governmental immunity is waived, I conclude it does not shield Hayden and Watson from liability on this claim because there are genuine issues of material fact whether they willfully and wantonly conspired to discharge Erickson. I need not address the Board's argument that it is protected by governmental immunity on this claim because Erickson has not alleged a conspiracy claim against it. (See complaint at ¶¶ 53  58.)
Immunity under Colorado's Governmental Immunity Act is lost if Hayden and Watson acted willfully and wantonly. § 24-10-118(2), 10A C.R.S. (1986). See also Patel v. Thomas, 793 P.2d 632, 637 (Colo.App.1990). Whether Hayden and Watson willfully and wantonly conspired to terminate Erickson's employment is a question of fact. See Patel, 793 P.2d at 637. See also Horton v. Reaves, 186 Colo. 149, 526 P.2d 304, 308 (1974).
Hayden's and Watson's own affidavits raise genuine issues whether they wilfully and wantonly conspired to discharge Erickson. In their affidavits Hayden and Watson recite several instances when Erickson allegedly defied the Board's interests. (See defendants' exhibit E, Watson affidavit at ¶¶ 7-11; defendants' exhibit F, Hayden affidavit at ¶¶ 9-12.) A finder of fact must determine whether these acts were against the Board's best interests or merely personal squabbles among Hayden, Watson, and Erickson. If the latter, the jury reasonably could infer that Hayden and Watson willfully and wantonly conspired to discharge Erickson because of their personal differences with him. Consequently, Hayden and Watson are not entitled to governmental immunity as a matter of law and summary judgment cannot enter on Erickson's conspiracy claim.
Hayden and Watson further argue that Erickson fails to state a claim for conspiracy. To state a claim for civil conspiracy a plaintiff must alleged that there was an agreement between two or more persons to accomplish an object and in attempting to accomplish the object they committed an unlawful overt act with resulting damages. Jet Courier Service, Inc. v. Mulei, 771 P.2d 486, 502 (Colo.1989).
Erickson alleges that Hayden and Watson met secretly and agreed to terminate his employment during a convention in December, 1991. He alleges that their secret meeting violated Colorado's open meeting law (§ 24-6-402, 10A C.R.S. (1991)) and, therefore, constitutes an unlawful overt act. Under Colorado's open meeting law a meeting of a quorum of any local public body must be open to the public whenever any public business is discussed or at which any formal action may be taken. § 24-6-402(2)(b), 10A C.R.S. Hayden and Watson, as two of the three county commissioners, comprise a quorum of the Board. Their alleged secret meeting during which they supposedly agreed to discharge Erickson may have violated Colorado's open meeting law. Erickson's complaint *424 states a claim under Colorado law for civil conspiracy.

VIII. C.R.C.P. 106(a)(4) claim
When Erickson filed this complaint in state court he asserted a claim under C.R.C.P. 106(a)(4) for review of the Board's decision to terminate his employment. Whether the Board acted in a judicial or quasi-judicial capacity when discharging Erickson predominates over Erickson's federal and state free speech and conspiracy claims. Thus, I decline pendent jurisdiction over Erickson's Rule 106(a)(4) claim for judicial review. See United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

IX. Attorney Fees
Erickson's complaint is not frivolous, groundless, meritless, or lacking substantial justification. Furthermore, because Erickson's conspiracy claim remains, which includes allegations of willful and wanton conduct, the Board's request for attorney fees under § 24-10-110(5), 10A C.R.S. (1986) is not well taken.
Accordingly, IT IS ORDERED that
(1) Erickson's federal claims under section 1983 and state claims under Art. II § 25 of the Colorado Constitution for the violation of his procedural and substantive due process rights are dismissed with prejudice as to all defendants;
(2) Erickson's federal claims under section 1983 and the Colorado Constitution for the violation of his free speech rights are dismissed with prejudice only as to Hayden and Watson but remain pending against the Board;
(3) defendants' motion for summary judgment on Erickson's civil conspiracy claim IS DENIED;
(4) Erickson's claim under C.R.C.P. 106(a)(4) is dismissed without prejudice; and
(5) defendants' request for attorney fees IS DENIED.