**Jerry LAWSON, Plaintiff,**

v.

**SCIENCE APPLICATIONS INTERNATIONAL CORPORATION, (SAIC), a Delaware corporation, Defendant.**

**Civ. A. No. 94–K–587.**

United States District Court,
D. Colorado.

Aug. 2, 1995.

James Scott Detamore, Denver, CO, George C. Price, Denver, CO, for plaintiff.

James A. Jablonski, Mary C. Kloepfer, Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Defendant Science Applications International Corporation's (SAIC) moves for summary judgment. Plaintiff Jerry Lawson worked for SAIC from April 29, 1991 to March 12, 1992 when SAIC dismissed him. Lawson makes three claims alleging this dismissal was unlawful: intentional breach of

contract, breach of implied contract, and breach of contract created by a situation instinct [1] with an obligation.[2] SAIC contends Lawson's employment was at will, and thus it is entitled to summary judgment.

Interpreting the record in a light most favorable to Lawson, I find his arguments unpersuasive as a matter of law and grant SAIC's motion. Furthermore, Colorado does not recognize a claim for a situation instinct with an obligation that is distinct from a claim for breach of implied contract.

## I. *Background*

SAIC hired Lawson to manage its Colorado Springs office. Less than one year after he started, an employee made an anonymous phone call to SAIC headquarters in San Diego alleging Lawson offended her with sexual language. SAIC sent Dennis Ashwood, Human Resources Manager, to investigate this situation because Ashwood had also received two complaints concerning offensive comments and jokes Lawson had allegedly made.

After interviewing employees in the Colorado Springs office, Ashwood concluded no sexual harassment had occurred, but an issue regarding Lawson's communications and management style needed to be addressed. When Lawson discovered someone had accused him of sexual harassment, he became upset. Ashwood did not divulge much information. He told Lawson he concluded from his investigation that Lawson was insensitive to the feelings of his female employees. He also told Lawson he would recommend SAIC limit his discussions with his staff to business matters only. The day after Ashwood's departure, Lawson called a staff meeting.

Lawson claims he held the meeting to publicize the charges in order to reduce the risk of blackmail. The employees felt he wanted to discover who had made the accusation. Lawson and his staff had another meeting the following day. This one became heated and ended with the security officer sending a few employees home. These meetings sparked further investigations from which Lawson's superior, Bob Aguais, concluded Lawson could no longer manage the office. Next, Aguais' superiors, Keith Krammes and Richard Miller, met with Lawson.

At the meeting, Lawson discussed the events and gave his account of them. Following this discussion, Krammes and Miller dismissed Lawson.

## II. *Standard for Summary Judgment*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The Tenth Circuit has stated: "To be a 'genuine' factual dispute, there must be more than a mere scintilla of evidence. To avoid summary judgment, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. Summary judgment may be granted if the evidence is merely colorable or is not significantly probative." *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir.1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250–51, 106 S.Ct. 2505, 2510, 2511–12, 91 L.Ed.2d 202 (1986)).

## III. *Merits*

### A. The Express Contract: What Were the Terms?

The first question presented by Lawson's claims is whether his employment contract was at will or for a definite term. Lawson argues he had a 27–month contract with SAIC. To prove this assertion, he offers two propositions. First, because his offer contained an annual salary, Lawson's employment contract was for a specific length. Second, SAIC's contract with the government was for twenty-seven months; therefore, ac-

---

1. Lawson uses "imbued" instead of "instinct." Instinct is the original language, and I find it more appropriate for research purposes. *See Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880, 892 (1980) (quoting from *Wood v. Lucy, Lady Duff–Gordon*, 222 N.Y. 88, 118 N.E. 214 (1917).

2. In his complaint, Lawson also alleged his dismissal violated public policy. After discovery, however, he dropped this claim. (Pl.'s Resp. Def.'s Mot.Summ.J. at 2.)

cording to industry practice, Lawson's contract was for the same time period. These propositions, however, are not supported by the evidence or the case law.

■ SAIC's offer did not explicitly include an annual salary. The letter stated Lawson would receive "a biweekly starting salary of $2,634.62 which is equivalent to a rate of $68,500 per year." (Letter from SAIC to Lawson of 4/9/91, Def.'s Ex. 31.) This statement does not amount to an employment contract for a definite term. The Colorado Court of Appeals has stated, "Unless the circumstances indicate otherwise, a contract which sets forth an annual salary rate but states no definite term of employment is considered to be indefinite employment, terminable at the will of either party without incurring liability for breach of contract." *Justice v. Stanley Aviation Corp.*, 35 Colo. App. 1, 530 P.2d 984, 985 (1974), *applied in Garcia v. Aetna Finance Co.*, 752 F.2d 488, 491 (10th Cir.1984). Thus, Lawson's argument that an annual salary provides the basis for a jury issue is unfounded; moreover, the circumstances here do not "indicate otherwise."

Lawson signed four forms acknowledging he or SAIC could unilaterally terminate his employment "at any time [and] for any reason." Because one of the forms, the certification to the SAIC Standards of Business Ethics and Conduct Booklet, is conspicuous as a matter of law, I need not assess the validity of the other two disclaimers.[3] *See Healion v. Great–West Life Assurance Co.*, 830 F.Supp. 1372, 1375 (D.Colo.1993) ("Whether a disclaimer is conspicuous is a question of law."). Lawson claims, "[T]he disclaimers were entirely, [sic] inconspicuous, disguised, and intended not to be read or understood...." (Pl.'s Resp. Def.'s Mot. Summ.J. at 7.) The evidence, however, contradicts this contention. The certification

was only three paragraphs long; Lawson apparently detached it from the booklet and handed it to SAIC. *See supra* note 3.

Similarly, Lawson's claim that the industry's practice dictated a finite contract is not substantiated. To prove this contention, Lawson only offers his own allegations. He states, "It is standard practice, custom and usage in the industry in which Mr. Lawson worked for over 17 years that a manager hired to do a contract was hired for a term of at least the contract, and anyone making such an offer to another working in this field knew this to be the case." (Pl.'s Resp. at 4.) Considering the offer letter contained no definite term for employment and the disclaimers clarified the at will nature of his employment, I find this evidence "merely colorable" and not sufficient to withstand SAIC's summary judgment motion.

### B. Was There an Implied Contract?

■ The second question presented is whether SAIC's policies and representations constituted an implied contract. Lawson argues SAIC's policies and his reliance thereon required SAIC to terminate him only for good cause and to follow progressive disciplinary measures. I disagree.

The Supreme Court of Colorado has stated at will employment is not absolute. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo.1987). Two legal theories illustrate this precept.

The first one encompasses traditional offer and acceptance analysis. Lawson must prove that in publicizing the termination procedures, SAIC was making an offer such that Lawson's assent would conclude the bargain. *Adams County School District No. 50 v. Dickey*, 791 P.2d 688, 692 (Colo.1990).[4] He must also demonstrate "his initial or continued employment constituted acceptance of and consideration for those procedures." *Id.*

**3.** Lawson signed this certificate on two separate occasions. The second paragraph reads:

SAIC recognizes that any employee may voluntarily terminate his or her employment at will; that is, at any time for any reason. Conversely, SAIC reserves the same right to terminate any employee at any time for any reason. Any agreement which varies the right of the employee or SAIC to terminate the employment

relationship at any time must be set forth in an express written agreement and signed by both the employee and SAIC's Senior Vice President for Administration.
(Def.'s Ex. 2.)

**4.** *Dickey* discusses these rules with respect to termination procedures, but the reasoning also applies to termination for good cause covenants.

at 693. The second doctrine is promissory estoppel.

Under this theory, Lawson must establish that SAIC "should reasonably have expected [him] to consider the employee manual as a commitment from [SAIC] to follow the termination procedures, that [he] reasonably relied on the termination procedures to his detriment, and that injustice can be avoided only by enforcement of the termination procedures." *Id.* Because SAIC never provided Lawson with specific procedures, neither theory applies here.

"An employer's distribution to employees of handbooks or policy manuals, which contain *specific* procedures for termination of employment . . ." can lead to the formation of a contract. *Calhoun v. Ball Corporation*, 866 F.Supp. 473, 477 (D.Colo.1994) (emphasis added). Lawson, however, does not establish that SAIC promulgated specific procedures. Instead, he uses SAIC announcements concerning its employment philosophy.

Lawson contends five statements made by SAIC officials support his argument that SAIC agreed to terminate him only for good cause and to apply progressive disciplinary procedures. First, Lawson underscores that the offer letter stated SAIC would "provide an environment that is sensitive and responsive to the individual needs of our staff." (Letter from SAIC to Lawson of 4/9/91, Pl.'s Ex. 31.) Second, he notes an orientation session emphasized SAIC treats its employees fairly and equitably and with dignity and respect. Third, Lawson highlights the company credo which states, "We will treat our fellow employees honestly and fairly, and shall insure equal opportunity for employment and advancement." (Pl.'s Resp. at 3.) Fourth, he uses a company memorandum to illustrate SAIC agreed to " 'encourage and assist all people to find satisfying, vital, and productive job fulfillment. . . . This policy applies to all personnel actions, such as . . . promotion, and termination. . . .' " (*Id.* at 4.) Finally, Lawson claims one SAIC official commented, "[O]ur paramount concern is for the employees, to make sure that they're being treated fairly." (*Id.*)[5] These statements, however, do not amount to promises to terminate only for good cause or to follow outlined termination procedures;[6] thus, they could not serve as the basis for an implied contract.[7]

---

5. In his response brief, Lawson argues a handbook titled "SAIC Security and You" stipulates that SAIC has progressive disciplinary procedures depending on the severity of the incident. I disagree for three reasons. First, this manual only applies to security violations of which Lawson was not accused. Second, Lawson signed two conspicuous disclaimers. *See* discussion *supra* part III.A. Finally, in neither his affidavit nor deposition did Lawson allege he read and relied on the security manual. In his brief, he stated he was "aware of [this] document." (Pl.'s Table of Material Facts, ¶ 14.)

6. Lawson argues *Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533 (10th Cir.1994) supports his claim that SAIC's statements amounted to express promises. In *Stahl*, defendant Sun's EEOC policy and the Sun Values document contained various representations that the defendant would compensate employees based on their individual contributions.

The documents read, " 'All Personnel actions, including recruitment, selection, training, compensation, promotion, and recreation, shall be based upon individual ability, interests, and performance.' " *Id.* at 536 (quoting Appellant's App. at 134). They also stated, " 'We are clear about expectations and provide rewards and recognition on the basis of contributions. We treat people equitably and consistently.' " *Id.* (quoting Appellant's App. at 134). The defendant ignored these assurances when it continued to take away the plaintiff's sales accounts after she continued to excel. This case, however, is different.

Lawson argues SAIC's statements constituted an agreement not to terminate him without good cause, but unlike the language in *Stahl*, SAIC's communications were not specific and did not relate to the alleged contract. The court in *Stahl* stated, "The language in the [manuals] demonstrates the requisite level of specificity and commitment required to send the matter to the jury." *Id.* As a matter of law, the general statements in this case do not meet this standard. In addition, unlike the plaintiff in *Stahl*, Lawson signed a disclaimer acknowledging SAIC could terminate him for any reason.

7. Even if SAIC's statements were analogous to procedures outlined in an employee handbook, Lawson signed at least two disclaimers that were clear enough to notify him of the at will nature of his employment. *See* discussion *supra* part III.A. "Summary judgment denying claims based on a handbook is appropriate if the employer has clearly and conspicuously disclaimed intent to enter a contract limiting the right to discharge employees." *Ferrera v. Nielsen*, 799 P.2d 458, 461 (Colo.App.1990).

After observing SAIC's statements lacked specificity to constitute any agreement and after concluding the disclaimers were conspicuous, I grant SAIC's summary judgment with respect to Lawson's breach of express and implied contract claims.[8]

In his response brief, Lawson argues SAIC's policies constituted an express covenant of good faith and fair dealing. Lawson relies on *Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533 (10th Cir.1994) and *Price v. Federal Express Corporation*, 660 F.Supp. 1388 (D.Colo.1987) to support this assertion. These cases, however, contain significantly different facts from this one.

The plaintiffs in *Stahl* and *Price* did not sign disclaimers. They were also provided with company manuals that contained clear statements of policy. *Stahl* involved specific policies relating to an elaborate sales compensation scheme which the defendant ignored. The court found the policies clear enough to comprise an enforceable promise. 19 F.3d at 536; *see supra* note 6. In *Price,* the company's manual stated, "The key aspect of any manager's approach to disciplinary policies has to be based on fairness, common sense, and valid business decisions...." 660 F.Supp. at 1392 n. 3. Thus, Lawson's reliance on these cases is misplaced.[9]

## C. Situation Instinct With an Obligation

■ The expression "situation instinct with an obligation" appeared in the classic law school contract's case *Wood v. Lucy, Lady Duff–Gordon,* 222 N.Y. 88, 118 N.E. 214, 216 (1917). Over one-half a century later, the Michigan Supreme Court incorporated this phrase into its opinion in *Toussaint v. Blue Cross & Blue Shield of Michi-*

*gan,* 408 Mich. 579, 292 N.W.2d 880 (1980). The court stated:

> While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly, cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly. No pre-employment negotiations need take place and the parties' minds need not meet on the subject; nor does it matter that the employee knows nothing of the particulars of the employer's policies and practices or that the employer may change them unilaterally. It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation "instinct with an obligation."

*Id.* at 892 (citations omitted).

Discussing *Toussaint,* the Sixth Circuit explained policy manual terms are not only enforceable as express promises under quasi contract or promissory estoppel. In addition, they are enforceable because the Michigan Supreme Court recognizes a situation instinct with an obligation, "an obligation distinct from and independent of contract analysis." *Elsey v. Burger King Corp.,* 917 F.2d 256, 259 (6th Cir.1990). Colorado courts, however, have not accepted this approach.

8. Lawson also argues several SAIC managers did not know what at will employment meant; furthermore, they used progressive discipline in handling past misconduct charges. This claim, when considered along with the disclaimers, is not enough to create a genuine issue of material fact.

9. Noting the problem with general statements of policy, the Tenth Circuit has stated:
> ... Defendant's Credo and equal opportunity memorandum do not contain detailed layoff guidelines or other guarantees of employment. Rather, Defendant's Credo merely in-

cludes general statements to the effect that it is committed to "the dignity and privacy due all human beings" and providing "a safe and healthy workplace...." Statements such as these are merely "vague assurances" and too indefinite to constitute a contractual offer which would enable a court to determine whether a contract has been performed.

*Vasey v. Martin Marietta Corp.,* 29 F.3d 1460, 1465 (10th Cir.1994) (citations omitted). I note also the plaintiff in *Vasey* did not sign a disclaimer.

In *Churchey v. Adolph Coors Co.*, the Colorado Supreme Court quoted *Toussaint.* It did not adopt *Toussaint*'s reasoning as a separate claim. Conversely, the court noted it had favorably cited *Toussaint* in its *Continental Air Lines, Inc. v. Keenan, supra,* decision to illustrate the application of offer and acceptance analysis with respect to employers, employees, and employee manuals. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1348 (Colo.1988). Thus, Colorado does not recognize a separate claim for a "situation instinct with an obligation."

### IV. *Conclusion*

For the foregoing reasons, I grant SAIC's summary judgment motion. Lawson signed at least two disclaimers that clearly and conspicuously stated his employment was at will. In addition, the policies upon which Lawson relies lack sufficient specificity to establish an implied contract to terminate only for good cause. Finally, Colorado does not recognize a claim for a situation instinct with an obligation that is different from a claim for breach of implied contract.