PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 10/8/96**

TENTH CIRCUIT

---

CATHY ORBACK, ALLEN ORBACK,
MATILDA VILLARREAL, CAROL
SANCHEZ,

    Plaintiffs-Appellants,

    v.

HEWLETT-PACKARD COMPANY,

    Defendant-Appellee.

No. 96-1001

---

Appeal from United States District Court
for the District of Colorado
(D.C. No. 93-K-1376)

---

Lee T. Judd, of Andrew T. Brake, P.C., of Denver, Colorado, for the appellants.

Dennis A. Gladwell (Jessica Lee with him on the brief), of Gibson, Dunn & Crutcher, of Denver, Colorado, for the appellee.

---

Before EBEL, KELLY, and BRISCOE, Circuit Judges.

---

BRISCOE, Circuit Judge.

---

    Plaintiffs, all former Colorado employees of Hewlett-Packard Company, appeal from summary judgment entered for Hewlett-Packard in four consolidated wrongful discharge actions. Although the circumstances surrounding each plaintiff's termination of employment differ, all plaintiffs argue implied contract and promissory estoppel theories

give them the right to enforce the discipline/involuntary termination provisions of Hewlett-Packard's personnel policies contained in its manual, as well as statements of corporate philosophy contained in "The HP Way."

## I.

Plaintiff Cathy Orback left Hewlett-Packard through the company's Voluntary Severance Incentive (VSI) program, after another manager had been placed in her position while she was on extended sick leave recuperating from surgery. Plaintiff Allen Orback resigned in the midst of a disciplinary process that he viewed as unfair. Plaintiff Carol Sanchez took advantage of the VSI program to avoid the stress of returning to an uncomfortable relationship with her manager after she had taken an extended leave. Plaintiff Matilda Villarreal was involuntarily terminated at the end of a disciplinary process that included a verbal warning, a written warning, and probation.

Hewlett-Packard's statement of corporate philosophy, "The HP Way," provides in part:

> BELIEF IN OUR PEOPLE
> Confidence in, and respect for, our people, instead of depending upon extensive rules and procedures.
> Trust people to do their jobs right (individual freedom) without constant directives.
> Opportunity for meaningful participation (job dignity).

Appellants' append. I at 143. The company's corporate objectives provide in part:

> OUR PEOPLE--To help HP people share in the company's success which they make possible; to provide job security based on their performance; to insure a safe and pleasant work environment; to recognize their individual achievements; and to help them gain a sense of satisfaction and accomplishment from their work.

Id. at 145. Hewlett-Packard also developed a "Personnel Policies and Guidelines" manual. The first page of the manual contains a disclaimer that the policies and

-2-

guidelines contained in the manual do not represent a contract, and states: "This manual is distributed for the use of managers having responsibility for decision making based on its contents. Nevertheless, any employee may review this manual if a better understanding or appreciation of our policies and guidelines will result." Appellee's append. at 26. The manual explains that the guidelines and policies allow managers flexibility, although that freedom is more restricted in implementing "policies" than in implementing "guidelines." Section 5 of the training and development section of the manual deals with the corrective action process:

> The following process is a guide to managers in dealing with unacceptable performance. Although most situations will generally follow the process described below, it is recognized that exceptions may be appropriate. Exceptions include but are not limited to new employees and employees who have been the subject of prior corrective action efforts.

Appellants' append. I at 130. The manual then goes on to describe the corrective action process that includes verbal discussion, written warning, probation, and termination.

Only Cathy Orback was able to establish that she received a copy of the manual. She did not have a copy until she became a manager and did not remember looking at a manual before that. Allen Orback did not remember receiving a copy of the manual and had not read the provisions dealing with termination or progressive discipline. Carol Sanchez did not recall having a copy of the manual or having access to one, but she thought she might have seen portions of the manual. Matilda Villareal testified she may have seen a copy of the manual once and had been told she could look at the manual. She did not recall reading the manual or any sections of the manual dealing with termination or progressive discipline.

John Hsu, a production associate, testified in his deposition that he was given

access to the manual when he had a question about procedures. He had not heard about the manual through management, but became aware of it through rumors from other employees. Carolyn Tuttle, personnel liaison, testified in her deposition that the company has a progressive disciplinary process in which an employee is given coaching, a verbal warning, a written warning, and probation before discharge for disciplinary reasons, and that this corrective action process is generally followed, although there are exceptions. She also testified "The HP Way" reflects the company's "core values." Richard Spangler, a manager with Hewlett-Packard, testified in his deposition that the corrective action process was routinely followed. Although he was aware of the disciplinary guidelines from his training as a manager, he could not remember employees ever being informed of the process. He testified that the company "tries to outline the guidelines and the boundaries within which the supervisors are allowed to operate" and that managers "would use that book as their first guideline as to what normal policy would be in a certain situation." Appellants' append. I at 127. He testified that most managers seek advice from their managers or personnel liaisons when they deviate from the manual.

## II.

In granting summary judgment to Hewlett-Packard, the district court concluded no reasonable trier of fact could find that Hewlett-Packard's policies manifested an intent on the part of the company to form a contract or that the company reasonably should have expected employees to consider the manual as a commitment by the company to follow the policies contained therein.

Summary judgment should be granted where, taking the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact and the

-4-

moving party is entitled to judgment as a matter of law. The non-moving party must present enough evidence to allow a reasonable jury to find for the non-moving party, and cannot rest upon mere allegations or denials of the pleadings. Wilson v. Meeks, 52 F.3d 1547, 1551-52 (10th Cir. 1995). On appeal, we apply the same standard. Martin v. Board of County Com'rs of County of Pueblo, 909 F.2d 402, 404 (10th Cir. 1990).

An employee who is hired in Colorado for an indefinite period is an "at will employee" whose employment may be terminated by either party without cause or notice, and whose termination of employment does not give rise to a cause of action. Continental Air Lines v. Keenan, 731 P.2d 708, 711 (Colo. 1987). Therefore, summary judgment in favor of Hewlett-Packard is proper unless plaintiffs present evidence sufficient to rebut the presumption of at-will employment. See Schur v. Storage Technology Corp., 878 P.2d 51, 54 (Colo. App. 1994). Plaintiffs attempt to rebut the presumption through alternative theories of implied contract and promissory estoppel based on employee handbooks, as recognized in Continental. Plaintiffs rely on the provisions of Hewlett-Packard's manual and "The HP Way."

Plaintiffs' reliance on "The HP Way" clearly fails. Such general indefinite policy statements do not abrogate employment at will. Any promises to be found in this philosophical statement "do not address any specific term of employment, and . . . do not diminish the employer's right to terminate plaintiff's contract with or without cause. As a result, these promises would not support the finding of an implied contract." Mariani v. Rocky Mountain Hosp. and Medical Service, 902 P.2d 429, 434 (Colo. App. 1994). In addition, the documents a plaintiff relies upon to overcome the presumption of employment at will must be sufficiently definite to enable the court to determine whether

the contract has been performed. Vasey v. Martin Marietta Corp., 29 F.3d 1460, 1464 (10th Cir. 1994). The statement of corporate philosophy contains, at most, vague assurances too indefinite to constitute a contract offer which would enable the court to determine whether a contract had been performed.

The question then becomes whether the manual rebuts the presumption of employment at will, either by creating an implied contract or providing a basis for promissory estoppel. The underlying principle behind the implied contract theory is that the employer has made an offer to the employee showing a willingness to be bound to some specific restrictions when terminating employment. Adams County School Dist. No. 50 v. Dicky, 791 P.2d 688, 693 (Colo. 1990). The document relied on to establish the implied contract must show the employer's willingness to enter into a bargain and "justify the employee in understanding that his assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain." Id.

While the minds of the parties need not meet on the subject, the termination procedures may be altered unilaterally, and an employee need not know the details of the procedure, the employer must choose to make the procedures known to its employees before an implied contract can arise. See Adams County, 761 P.2d at 693. "[A]n employee must show that the employer's promulgation of termination procedures was an offer and that the employee's initial or continued employment constituted acceptance of that offer." Churchey v. Adolph Coors Co., 759 P.2d 1336, 1348 (Colo. 1988). Thus, materials furnished directly to the employee, such as employee manuals and policy statements, can potentially show an employer's offer to the employee. In the present case, plaintiffs do not rely on material furnished to employees as the basis for such an "offer"

regarding termination procedures. Plaintiffs rely on an internal policy guidelines manual that was only furnished to managers. Because this manual was not provided to plaintiffs, it cannot operate as a contractual offer to them and cannot reasonably justify an understanding that assent of employees was invited. See Vasey, 29 F. 3d at 1464.

In addition to a theory of implied contract, a theory of promissory estoppel can entitle an employee to enforce the employer's termination procedures in an appropriate case. Plaintiff must "demonstrate that the employer should reasonably have expected the employee to consider the employee manual as a commitment from the employer to follow the termination procedures, that the employee reasonably relied on the termination procedures to his detriment, and that injustice can be avoided only by enforcement of the termination procedures." Adams County, 791 P.2d at 693.

Under the promissory estoppel theory, "the promise must be one which the employer should reasonably have expected the employee to consider as a commitment from the employer." Ferrera v. A.C. Nielsen, 799 P.2d 458, 461 (Colo. App. 1990). Again, the promise relied on must be made to the employee who relies on it. The alleged source of the promises relied on by plaintiffs here is a manual that was not provided to employees. The manual's deliberately limited distribution, its clear and conspicuous disclaimer, its lack of any mandatory termination procedures, and the discretion left to individual managers prevent the manual from serving as a basis for any promises Hewlett-Packard should reasonably have expected any of the plaintiffs to consider as a commitment.

Even if the manual were construed to give rise to enforceable duties, plaintiffs have failed to produce sufficient evidence of another aspect of a valid claim--that any

alleged implied contract regarding disciplinary procedures prior to involuntary termination was in fact breached. Cathy Orback, Allen Orback, and Carol Sanchez left voluntarily, availing themselves of the benefit of a severance package in exchange for their resignations. As regards these three plaintiffs, there was no evidence to support an inference of constructive discharge. See Christie v. San Miguel County School Dist. R-2(J), 759 P.2d 779, 782-83 (Colo. App. 1988) (proving constructive discharge requires evidence establishing deliberate employer action which makes or allows employee's working conditions to become so objectively difficult or intolerable that employee has no option but to resign). As regards Matilda Villarreal, there is no evidence of any breach of the disciplinary procedures described in the manual. Even if she were entitled to enforce the termination provisions of the manual, she has failed to produce any evidence that those provisions were not followed in the termination of her employment.

AFFIRMED.