**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 17 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SHELIA SHORTER,

      Plaintiff-Counter-
      Defendant - Appellant,

  v.

ICG HOLDINGS, INC., a Colorado
corporation,

      Defendant-Counter-
      Claimant - Appellee.

No. 98-1355

---

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 97-B-955)

---

Nora V. Kelly (Ronald E. Gregson, Gregson & Pixler, Denver, Colorado, on
brief), Denver, Colorado, for Plaintiff-Appellant.

Paul R. Wood (James Rollin Miller and Candace M. Dunley on brief), Miller &
Welch, Denver, Colorado, for Defendant-Appellee.

---

Before **EBEL, MAGILL,**[*] and **LUCERO,** Circuit Judges.

---

**MAGILL,** Circuit Judge.

---

[*]Honorable Frank Magill, Senior Circuit Judge, United States Court of Appeals for
the Eighth Circuit, sitting by designation.

Shelia Shorter sued her former employer ICG Holdings, Inc. (ICG), claiming she was unlawfully terminated because of her race in violation of 42 U.S.C. §§ 2000e - 2000e-17 (Title VII). She also sued ICG for breach of contract. The district court granted ICG's motion for summary judgment, and Shorter appealed. We affirm.

## I.

The following are the facts viewed in the light most favorable to Shorter, the nonmoving party. Shorter, a black female, joined ICG in January 1996 as a corporate recruiter in ICG's Department of Human Resources (HR). As a recruiter, Shorter was responsible for keeping track of ICG's job openings, processing resumes sent to ICG, and forwarding those resumes to the appropriate hiring managers. At the time Shorter was hired, ICG was going through a period of rapid expansion.

Shorter was hired by Patricia Lawrence, then director of HR and Shorter's supervisor. In April 1996, Lawrence left ICG, and Judy Dughman replaced Lawrence as the new director of HR. Shorter worked under Dughman's supervision until May 15, 1996, when Dughman fired her.

During the time Shorter worked for Dughman, Dughman made three race-related comments to and about Shorter. Once, while eating lunch with Shorter,

Dughman asked Shorter about black men's sex organs. On another occasion, Dughman told another ICG employee that Shorter talked like people of her culture, race, or color. See Appellant's App. at 412-13.[1] During a confrontation with Shorter about Shorter's job performance, Dughman told her, "You are just on the defensive because you are black." Id. at 407.

On May 15, 1996, Dughman fired Shorter. Dughman cited Shorter's deficient job performance and poor attitude as the reasons for her decision. She also told another employee that she fired Shorter because Shorter was incompetent. One or two days after firing Shorter, Dughman, apparently in a fit of anger at not being able to locate an important document in Shorter's office, referred to Shorter as an "incompetent nigger." Id. at 421.

After filing a timely charge with the EEOC and receiving a right to sue letter, Shorter filed suit against ICG alleging race and sex discrimination.[2] She also sued for breach of contract, claiming ICG did not follow its employee policy manual when it terminated her. The district court granted ICG's motion for summary judgment.[3] This appeal followed.

---

[1]The employee who recounted this statement did not remember which exact term Dughman used.

[2]Shorter abandoned her sex discrimination claim in the district court.

[3]ICG also filed a cross-claim for abuse of process. The district court granted Shorter's motion for summary judgment on the abuse of process claim. ICG does not

(continued...)

## II.

We review the district court's grant of summary judgment de novo. <u>See</u> <u>McKnight v. Kimberly Clark Corp.</u>, 149 F.3d 1125, 1128 (10th Cir. 1998). Summary judgment is appropriate if the moving party can show that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c). We view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. <u>See</u> <u>McKnight</u>, 149 F.3d at 1128.

In this case, Shorter claims she was discharged because of her race in violation of Title VII. The inquiry in a Title VII case is whether the defendant intentionally discriminated against the plaintiff. <u>See</u> <u>EEOC v. WilTel, Inc.</u>, 81 F.3d 1508, 1513 (10th Cir. 1996) (citing <u>USPS Bd. of Governors v. Aikens</u>, 460 U.S. 711, 715 (1983)). A plaintiff may prove intentional discrimination in one of two ways: "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Id.</u> (quotation marks omitted). Shorter argues that the evidence establishes intentional discrimination under either test.

---

[3](...continued)
appeal that decision.

## A. Direct Evidence of Discrimination

Shorter contends that Dughman's statements constitute direct evidence of discrimination. We agree with the district court that Dughman's statements do not constitute direct evidence of discrimination.

Direct evidence is "[e]vidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption." Black's Law Dictionary 460 (6th ed. 1990); see also WilTel, 81 F.3d at 1514 (noting that evidence which "require[s] the trier of fact to infer that discrimination was a motivating cause of an employment decision" is at most circumstantial evidence of discrimination, not direct evidence); Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th Cir. 1997). In contrast, statements of personal opinion, even when reflecting a personal bias or prejudice, do not constitute direct evidence of discrimination. See WilTel, 81 F.3d at 1514; Heim v. Utah, 8 F.3d 1541, 1546-47 (10th Cir. 1993); see also Ramsey v. City and County of Denver, 907 F.2d 1004, 1008 (10th Cir. 1990) (distinguishing between direct evidence of discrimination and "direct evidence of personal bias"). At most, such statements constitute only indirect or circumstantial evidence of discrimination because the trier of fact would have to infer that the bias reflected in the statements was the reason behind the adverse employment decision. See WilTel, 81 F.3d at 1514; Heim, 8 F.3d at 1547; Ramsey, 907 F.2d at 1008.

This case is similar to the situation we faced in <u>Heim</u>. In that case, the plaintiff accused her male supervisor of denying her job training opportunities because of her gender. Her supervisor, in an angry outburst over the plaintiff's performance of her duties, stated, "Fucking women, I hate having fucking women in the office." <u>Heim</u>, 8 F.3d at 1546. Plaintiff argued that this comment constituted direct evidence of discrimination. We disagreed:

> Although the remark by [the supervisor] was certainly inappropriate and boorish, it was on its face a statement of [the supervisor's] personal opinion. The evidence does not show that [the supervisor] acted with discriminatory intent, only that he unprofessionally offered his private negative view of women during a display of bad temper at work. At best, it is only arguable that a discriminatory intent . . . can be inferred from the statement. This type of inferential statement is not "direct evidence" of discrimination satisfying plaintiff's burden.

<u>Id.</u> at 1547.

Likewise, in this case, Dughman's remarks about Shorter were statements of personal opinion. As in <u>Heim</u>, the statements are not direct evidence that Dughman fired Shorter because she was black. Instead, the trier of fact would have to infer Dughman's motive from her statements. <u>See</u> <u>Ramsey</u>, 907 F.2d at 1008 (holding that supervisor's stated views that certain jobs were more suitable for women than other jobs were statements of personal opinion and did not constitute direct evidence of discrimination); <u>Furr v. AT & T Techs., Inc.</u>, 824 F.2d 1537, 1547, 1549 (10th Cir. 1987) (holding that managers' statements that

plaintiffs were too old to learn new technologies and too old to be in supervisory positions were not direct evidence of discrimination; rather, remarks were "specific instances of discriminatory statements" from which the reasons for the adverse employment decision would have to be inferred).

Because Dughman's remarks were statements of personal opinion and not statements directly relating to Shorter's termination, we conclude that Shorter has failed to present any direct evidence of discrimination.[4]

## B.  Indirect Evidence of Discrimination

In the alternative, Shorter argues that she can establish her claim of intentional discrimination indirectly by relying on circumstantial evidence of discrimination.  We evaluate Shorter's claim under the familiar burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under the McDonnell Douglas framework, the plaintiff initially bears the burden of establishing a prima facie case of discrimination.  See Reynolds v. School Dist. No. 1, 69 F.3d 1523, 1533 (10th Cir. 1995).  If the plaintiff establishes her prima facie case, the burden shifts to her employer to proffer a

---

[4]Shorter also argues that she was entitled to a "mixed motives" analysis. Generally, a mixed motives analysis only applies once a plaintiff has established direct evidence of discrimination.  See WilTel, 81 F.3d at 1514-15.  Moreover, because Shorter did not raise the mixed motives argument below, she has waived it on appeal.  See Tele-Communications, Inc., v. Commissioner, 104 F.3d 1229, 1232 (10th Cir. 1997) (appellate court will not consider issue raised for the first time on appeal, particularly when dealing with an appeal from a grant of summary judgment).

facially nondiscriminatory reason for the challenged employment action. See id. If the employer offers a nondiscriminatory reason, the burden shifts back to the employee to show that there is a genuine issue of material fact as to whether the employer's proffered reason is merely pretextual. See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997); Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995). A plaintiff can establish pretext by showing "either that a discriminatory reason more likely motivated the employer . . . or that the employer's proffered explanation is unworthy of credence." Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994) (quotation marks omitted) (alteration in original).

We assume without deciding that Shorter established a prima facie case of race discrimination in her termination. Thus, we consider whether ICG proffered a facially nondiscriminatory reason for Shorter's termination. See Reynolds, 69 F.3d at 1533.

ICG's proffered reason for terminating Shorter is inadequate job performance. In support of this reason, ICG offered extensive evidence of Shorter's inability and failure to do her job. Patricia Lawrence, the person who hired Shorter, testified that Shorter lacked fundamental recruiting skills and contacts in the field, a background which Lawrence believed Shorter possessed when she hired her. When Lawrence left ICG, she told Dughman that, of all the

employees in HR, Shorter would require the most time for development. Dughman testified that she received numerous and repeated complaints from ICG executives about Shorter's performance. For example, several ICG executives complained that Shorter provided them with inaccurate data about the number of job openings within ICG. In addition, clients complained that Shorter did not follow through after meetings with them.

Dughman's supervisor, John Field, also received numerous complaints about Shorter's performance which he passed along to Dughman, including that Shorter was not locating qualified candidates and was not following up on her recruiting duties. Field also testified that he had received similar complaints about Shorter's performance while Lawrence was her supervisor. According to another ICG employee, Shorter told him that she had no system in place for processing resumes and forwarding them to the appropriate hiring managers. This employee stated that resumes in Shorter's office were misfiled or lost, advertising invoices had not been paid, and open job positions within ICG were not listed in her reports to management. Two days before Dughman fired Shorter, Dughman and Shorter had a meeting regarding complaints from yet another HR employee about Shorter's poor job performance.

This evidence satisfies ICG's burden to provide a legitimate, nondiscriminatory reason for ICG's decision to terminate Shorter. Thus, for her

claim to survive summary judgment, Shorter must show that there is a genuine issue of material fact as to whether ICG's proffered reason is a mere pretext for discrimination. See Randle, 69 F.3d at 451. To support her claim of pretext, Shorter cites evidence that she claims demonstrates she was performing her job satisfactorily. Shorter also cites Dughman's statements as evidence of pretext.

Shorter does not challenge, let alone rebut, the myriad complaints offered by ICG regarding her deficient job performance. Shorter cites a handful of e-mails which she claims reflect her satisfactory job performance. However, only two of these e-mails arguably support her claim, and these refer to just two different tasks among the many she was required to perform. This e-mail correspondence hardly begins to rebut the overwhelming evidence of Shorter's inadequate job performance. Moreover, these e-mails were sent in March 1996 by her former supervisor, and ICG has proffered extensive complaints about Shorter's deficient performance after this time and while under Dughman's supervision. Shorter also cites the testimony of another ICG employee who stated he was surprised when he heard Shorter was fired. However, he explained that he was surprised only because he had not personally heard any complaints. He also testified that he had no basis to evaluate Shorter's job performance. Finally, Shorter cites her background in human resources and her own affidavit stating that she believed her work was satisfactory. However, "[i]t is the manager's

perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of [her] own relative performance." Furr v. Seagate Tech. Inc., 82 F.3d 980, 988 (10th Cir. 1996). Thus, we conclude that the meager evidence offered by Shorter is insufficient to meet her burden to show that ICG's proffered reason for firing her was pretextual. See Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997) ("The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient to create a dispute of fact that is genuine . . . ." (quotation marks omitted)).

Shorter also argues that Dughman's comments demonstrate that ICG's proffered reason for firing her was pretextual. Although such comments may serve as circumstantial evidence of discrimination, see WilTel, 81 F.3d at 1514, the plaintiff must still show some nexus between the statements and the defendant's decision to terminate the employee. See Rea, 29 F.3d at 1457 ("'Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions.'" (quoting Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir. 1994))).

Although some of the remarks were directed at Shorter, there is nothing in the statements that link them to Dughman's decision to terminate her. Compare Tomsic v. State Farm Mut. Auto. Ins. Co., 85 F.3d 1472, 1474, 1479 (10th Cir. 1996) (holding supervisor's statements supported inference of sex discrimination

when supervisor told plaintiff she would not succeed in training program, that she would lack incentive because her husband made too much money, and asked about her marital relationship, while at the same time telling others that plaintiff would be fired) with Hong v. Children's Mem'l Hosp., 993 F.2d 1257, 1265-66 (7th Cir. 1993) (holding that supervisor's statement to Korean employee that she should "learn to speak English," when there was no evidence that employee spoke anything other than English, did not create inference of discrimination absent evidence statement was related to decision to discharge her (quotation marks omitted)), cited in Cone, 14 F.3d at 531.  The fact that Dughman was Shorter's supervisor does not automatically establish the requisite nexus.  See Hong, 993 F.2d at 1266 (holding that supervisor's occasional use of racial slurs "directed at an employees' [sic] race . . . when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements were uttered by a decision maker"); see also McKnight, 149 F.3d at 1129 ("In order to rely on [allegedly discriminatory] statements, [plaintiff] must show that they were made by a decision maker, and that there was a nexus between the discriminatory statements and the decision to terminate." (emphasis added)).

We thus conclude that ICG has presented a legitimate nondiscriminatory reason for Shorter's termination and that Shorter has not presented evidence

sufficient to suggest that this reason was pretextual. The district court properly granted summary judgment for ICG on Shorter's race discrimination claim.

**III.**

Shorter's final claim is that ICG breached an implied contract with her because Dughman did not follow the termination procedures described in ICG's employee policy manual. Because Shorter was an at-will employee, she must rebut the presumption of at-will employment to prevail on her claim. See Orback v. Hewlett-Packard Co., 97 F.3d 429, 432 (10th Cir. 1996).

An employee policy manual can create an implied contractual relationship with an employee if it evidences an offer by the employer to the employee to be bound by certain procedures when terminating employment. See id. at 433. In order for the employer to be bound, the "manual must be communicated to the employee." Vasey v. Martin Marietta Corp., 29 F.3d 1460, 1464 (10th Cir. 1994). If the employer does not provide a copy of the manual to the employee, there is no binding offer by the employer to the employee. See Orback, 97 F.3d at 433. In Shorter's case, it is undisputed that she never received a policy manual from ICG. Because ICG did not provide a manual to Shorter, the manual was not a contractual offer to her. See id. (rejecting plaintiff's implied contract claim when manual not provided to employees, even though some testified that they had

access to it and one had seen portions of it).  Thus, Shorter cannot recover for breach of implied contract.

Even though Shorter cannot prevail on her implied contract claim, she may nevertheless be able to recover under a theory of promissory estoppel.  See Vasey, 29 F.3d at 1466.  In order for Shorter to recover under a promissory estoppel theory, she must demonstrate, inter alia, that she reasonably relied on the termination procedures to her detriment.  See id.  Shorter, however, presented no evidence that she read the manual and relied upon it to her detriment.  Thus, Shorter cannot prevail under a theory of promissory estoppel.

## IV.

For the foregoing reasons, we AFFIRM the decision of the district court.

98-1355, Shorter v. ICG Holdings, Inc.

**LUCERO**, Circuit Judge, concurring in part, dissenting in part

Because the majority's decision conflicts with clearly controlling precedent, and because I am concerned that the majority's approach results in judicial usurpation of the role of the jury and thereby defeat of Title VII and the 1991 Civil Rights Act, I dissent. Under the clearly established case law of the Supreme Court and of this circuit, the evidence presented below was sufficient to create a jury question on Shorter's claim she was fired because of her race. Summary judgment is meant only to facilitate efficient disposition of cases in which the evidence can lead to but one conclusion; it is not intended to allow the court to substitute its own subjective evaluation of motive, where genuinely disputed, for that of the jury.

Despite its recitation of the standard for reviewing a motion for summary judgment, see Fed. R. Civ. P. 56(c), the majority views the evidence in this case in the light most favorable to defendant ICG Holdings, the moving party. Cf. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990) (stating that, in applying the summary judgment standard, "we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion"). In so doing, the majority improperly assumes the jury's role of fact finder by weighing conflicting factual claims, drawing inferences from the evidence, and assessing intent.

On my review of the record, I conclude that Shorter has established a prima facie case of disparate impact race discrimination in termination under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Tomsic v. State Farm Mutual Automobile Ins. Co., 85 F.3d 1472, 1476-77 (10th Cir. 1996).  I agree with the majority that ICG has presented a race-neutral justification for Shorter's termination.  Therefore, the analysis hinges upon whether Shorter has presented sufficient evidence to create a genuine issue of material fact concerning pretext.[1]

In evaluating claims of pretext on summary judgment, we have held that:

> It is not the purpose of a motion for summary judgment to force the judge to conduct a "mini trial" to determine the defendant's true state of mind.  So long as the plaintiff has presented evidence of pretext (by demonstrating that the defendant's proffered non-discriminatory reason is unworthy of belief) upon which a jury could infer discriminatory motive, the case should go to trial.  Judgments about intent are best left for trial and are within the province of the jury.

Randle v. City of Aurora, 69 F.3d 441, 453 (10th Cir. 1995).

The majority's statement of the facts fails to characterize the summary judgment materials in the light most favorable to the plaintiff.  Most prominently, the majority describes the deposition testimony of ICG employee Kriss Papendick as stating "Dughman told another ICG employee that Shorter talked like people of

---

[1]An employer's subjective assertions of deficient performance do not suffice to rebut the qualification element of a plaintiff's prima facie case.  See MacDonald v. Eastern Wyoming Mental Health Center, 941 F.2d 1115, 1118-22 (10th Cir. 1991).  Thus, defendant's allegations of inadequate performance should be considered in evaluating neutral justification and pretext.

her culture, race, or color." Maj. Op. at 3. The actual text of Papendick's deposition testimony makes clear that Dughman explicitly linked her evaluation of Shorter's professional opportunities to her race and/or ethnicity:

Q     What did she tell you about Ms. Shorter?
A     She told me that there were problems. She told me that she had discussed them with Sheila and everything she had told me, she had already said to Sheila.
She said she felt if Sheila was going to get anywhere in the company, she had to improve the way that she talked.
Q     What did she mean by the way she talked?
A     She made a comment about the fact that she thought that even though Sheila is an intelligent young woman and that she had a good background or good education, I believe, she talked like other people did in her culture, race. I don't remember which terms she used, if it was her culture or if it was her race or people of her color. But I remember her specifically stating it, because I was rather surprised.

Appellant's App. at 412-13.

Likewise, the majority's statement that Shorter "does not challenge, let alone rebut" ICG's claims of deficient performance is not appropriate given the standard for summary judgment. Maj. Op. at 10. The record contains the following evidence that could support an alternative explanation for Shorter's performance problems: Shorter's assertions that ICG failed to provide her with necessary support staff, as it did for employees who were not black, and refused to allow her to attend the same training as other employees;[2] former ICG

---

[2]That statements offered to show pretext are plaintiff's own assertions does not

(continued...)

-3-

employee Michelle Brough's statement that ICG's president was "cold and indifferent to Ms. Shorter," Appellant's App. at 407; and the general difficulty of satisfying recruiting needs in a company undergoing rapid growth. The majority omits altogether reference to an ICG employee's testimony that the complaints about Shorter's job performance were "not at all" realistic. Appellant's App. at 411.[3]

Shorter presented additional evidence in the summary judgment materials implicitly addressing the question of pretext: testimony that Dughman had a pattern of arbitrarily terminating employees; testimony that when asked repeatedly, Dughman refused to explain why she believed Shorter incompetent; and documentary evidence of Dughman's own lack of reliability, based on her termination from ICG for resumé fraud, expense account discrepancies, and management style problems.

---

[2](...continued)
preclude their consideration in considering a summary judgment motion. See, e.g., Jackson v. University of Pittsburgh, 826 F.2d 230, 236 (3d Cir. 1987).

[3]Former ICG employee Kriss Papendick testified as follows:
Q    Who complained about her job performance?
A    Anybody who was trying to get somebody hired that they didn't have them the very next day after they requested it.
Q    So people were upset with the speed at which people were hired?
A    Yes.
Q    Did you feel it was a realistic–did you feel expectations were realistic when these people were complaining?
A    Not at all.
     Appellant's App. at 411.

Under the proper summary judgment framework, and viewed together with the explicit evidence of racial animus, I believe the inferences to be drawn from this evidence could support a reasonable jury's decision to credit a claim that ICG's proffered reason for terminating Shorter was a pretext for discrimination. More to the point, I would not discount statements demonstrating racial animus by the supervisor responsible for Shorter's termination, when these statements were both proximate in time to Shorter's termination, and linked her race to job performance.

The district court erred in finding Dughman's statements inadequate evidence of pretext at the summary judgment stage. Overtly discriminatory statements, even if they lack a sufficient nexus to employment actions to support a direct evidence theory, can nevertheless be used to question a defendant's proffered neutral justifications. See Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 551 (10th Cir. 1999); Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1396 n.5 (10th Cir. 1997). It is clearly not the law that pretext evidence is only that evidence which rebuts specific elements of the defendant's explanation. Rather, as here, explicit evidence of racism by a responsible decision maker can lead a reasonable juror to doubt the sincerity of an employer's explanations. See Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994) (stating that pretext may be established by showing either "that a discriminatory reason more likely

motivated the employer or . . . that the employer's proffered explanation is unworthy of credence") (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981)(alteration in original)).

Evidence of racial motivation can serve to challenge the validity of an employer's proffered justification, even absent additional independent evidence of falsity. See Price Waterhouse v. Hopkins, 490 U.S. 228, 251 (1989) (stating that "stereotyped remarks can certainly be evidence that [impermissible motive] played a part" in an employment decision). The purpose of the pretext analysis is to allow proof of discriminatory intent by permitting a plaintiff to point out a lie offered to obscure such intent. When independent evidence of racism by the decision maker exists with a sufficient nexus to the plaintiff and decision at issue, this can offer viable grounds to refuse to credit the employer's explanation. See Burdine, 450 U.S. at 256; see generally 1 Lex K. Larson, Employment Discrimination at 8-88 (2d ed. 1998) (stating that "at the second and third stages [of the McDonnell Douglas analysis], direct evidence of discriminatory attitudes or statements, or of their opposite, is relevant and persuasive"). Given the two means of establishing pretext set out in Burdine, 450 U.S. at 256, I would not discount Dughman's statements as evidence of racial bias by the relevant decision maker in the context of pretext analysis. The purpose of both direct evidence and pretext theories is to prove or disprove illegal discrimination. See Trans World

Airlines, Inc. v. Thurston, 469 U.S. 111, 121 ) (1985) (holding that the McDonnell Douglas framework does not apply once plaintiff has presented a direct evidence case, because its purpose is to "assure that the 'plaintiff [has] his day in court despite the unavailability of direct evidence'") (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1014 (1st Cir. 1979) (alteration in original)); Ramsey, 907 F.2d at 1007-08; see generally 1 Larson, Employment Discrimination at 8-89 to 8-93 (discussing related purposes of direct and indirect evidence methods). We must avoid a formalistic separation of the two that would exclude directly discriminatory statements, insufficient in themselves to prove a direct evidence theory, from consideration under the McDonnell Douglas framework. Such a separation would ignore the fact that the two frameworks are not ends in themselves, but rather means towards a common goal—identifying prohibited discrimination.

I take a very different view than does the majority of the relationship between this case and Cone v. Longmont United Hospital Ass'n, 14 F.3d 526 (10th Cir. 1994). In Cone, we rejected "stray" age-related comments by two hospital executives, not specifically directed against the plaintiff, as pretext evidence in an ADEA case. Id. at 531. In Cone, the plaintiff was terminated automatically for failure to return to work, and there was "no evidence that [the executive who uttered two ageist remarks] participated in Ms. Cone's automatic

termination, and age-related comments by non-decision makers are not material in showing the hospital's action was based on age discrimination." Id. There was also no connection shown between remarks regarding long-term employees made by another executive, who was involved in Cone's termination, and the motives behind that termination. See id. (concluding that the statement "'long-term employees have a diminishing return' . . could apply equally to employees under age forty.")

By contrast, the racial remarks at issue in this case were specifically directed at Shorter. Dughman's characterization of Shorter as an "incompetent nigger" days after Shorter's termination (by Dughman) explicitly linked a negative characterization of Shorter's work to an overt racial slur. (Only the jury can weigh the significance of the pairing of those two words.) Similarly, Dughman's statement that if Shorter wanted to succeed in her job she would have to speak less like a black person specifically linked Shorter's job performance to race and/or ethnicity. Based on this evidence, a jury could choose to believe that Dughman's evaluation of Shorter's performance was so contaminated by racial animus as to render her assertions of inadequate performance unworthy of credence.

This case is necessarily controlled by Tomsic, 85 F.3d 1472. In Tomsic, one plaintiff based a claim of sex discrimination in part on statements by her

supervisor, Miller, that "he did not think she would succeed [and that] her husband made too much money and that she therefore would lack incentive." Id. at 1474. Miller also told other employees, without specifying that it was because of gender, that Tomsic would be fired. See id. at 1474-75. This supervisor told the second plaintiff, in a conceded effort to prompt her resignation, that she would surely encounter marital problems if she continued to perform well at work because she would ultimately earn more money than her husband. See id. at 1475. Although the supervisor at issue did not have the actual authority to terminate the plaintiffs, we nevertheless concluded that his statements supported an inference of pretext. See id. at 1479.

Just as in Tomsic, the remarks at issue in this case "were directed to the plaintiff individually, unlike the very general statements in Cone." Id. at 1479. As in Tomsic, the remarks are directly linked to a decision maker with power over the plaintiff. See id. Noting the fact that Miller's sexist comments were before the manager responsible for asking for the plaintiffs' resignation, we stated in Tomsic that "we believe that this is a sufficient nexus to the decision to ask for plaintiffs' resignation; a jury could infer from Miller's remarks in the total context presented that unlawful bias was a motivating factor in defendant's decision." Id. The nexus in this case is even stronger. Dughman, unlike Miller, had—and exercised—full authority to terminate Shorter. Because this case

-9-

presents similar yet even stronger evidence of a nexus, the result reached by the majority conflicts squarely with our precedent in Tomsic.

The majority's resort to Hong v. Children's Mem'l Hosp., 993 F.2d 1257, 1265-66 (7th Cir. 1993), does not persuade me otherwise. In Hong, the Seventh Circuit relied on the fact that the racial slurs were "unrelated to the decisional process" to reject them as evidence of discrimination. Hong, 993 F.2d at 1266. Here, by contrast, factors exist sufficient to create a jury question on the issue of nexus between the supervisor's comments and the decisional process. These include: Dughman's statement linking Shorter's manner of speaking to her job prospects; the close temporal nexus between Shorter's termination and the racial slur uttered by Dughman; and Dughman's use of that slur in conjunction with the allegation of incompetence. Hong is thus clearly distinguishable.

It is inappropriate, at the summary judgment stage, for the court to weigh evidence of pretext against evidence of neutral motive. The task of considering this evidence together and weighing competing interpretations is, under the burden-shifting framework, a task for the fact finder. In this case, Tomsic controls the legal question of whether Shorter presented sufficient evidence of pretext to survive summary judgment. A reasonable jury could conclude that the particular racist comments at issue here reveal pretext in Dughman's assertion that Shorter was terminated for deficient performance, or it could decide to credit

ICG's averments of incompetence. I would allow the members of a jury to assess the evidence and make that determination. I would not substitute our views as appellate judges.

Accordingly, I dissent from the majority's holding that Shorter failed to present sufficient indirect evidence of discrimination for her claim to survive summary judgment under the McDonnell Douglas framework.[4]

_____

[4]I concur with the majority's conclusion that the district court did not err in granting summary judgment for ICG on the direct evidence claim. Given the similar levels of connection between discriminatory remarks and employment decisions in the two cases, Tomsic controls on the direct evidence issue just as decidedly as it does on the pretext issue. See Tomsic, 85 F.3d at 1478 ("[S]tatements such as those in issue here which 'are on their face expression of . . . personal opinion, and not an existing policy which itself constitutes discrimination' constitute circumstantial or indirect evidence, not direct evidence.") (quoting Ramsey, 907 F.2d at 1008). I also agree with the majority that the district court did not err in granting summary judgment on Shorter's implied contract claim.